**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

KRISTY MILLO, Personal Representative
of the Estate of BRET MILLO, and on
behalf of the HEIRS of the Decedent,

Plaintiffs,

v.

RALPH DELIUS, M.D.,

Defendant.

Case No. 3:11-cv-00027-SLG

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the court at docket 41 is defendant Ralph Delius' Motion for Partial Summary Judgment. At docket 48, plaintiff Kristy Millo opposes. At docket 51, Dr. Delius replies.

### FACTS AND PROCEDURAL BACKGROUND

This case involves claims of damages resulting from the fatal shooting of Bret Millo by defendant Dr. Ralph Delius during a guided hunting trip in May 2010. Plaintiff Kristy Millo, the widow of Bret Millo, appears in this action on behalf of herself, her late husband, and their three adult daughters.

The facts, viewed in the light most favorable to the plaintiffs for purposes of this summary judgment motion, are as follows: Dr. Delius is a pediatric heart surgeon from Detroit, Michigan.[1] Prior to the events giving rise to this action, he had been on twenty-one guided game hunts.[2] In May 2010, Dr. Delius was on a guided hunting trip with

---

[1] Mem. in Supp. of Mot. at 3 (Docket 38).

[2] Answer to Interrog. No. 3 and Attach., Ex. E to Mem. in Supp. of Mot. (Docket 41).

Alaska Peak and Seas, a company owned by Mark Galla.[3]  Dr. Delius had previously

gone on two black bear hunting trips with Mr. Galla, but this was his first brown bear

hunt.[4]  Mr. Millo and Mr. Galla were the guides on the hunt.[5]  There were two other

clients besides Dr. Delius, as well as a cook. [6]

The shooting occurred on May 30, 2010 on the ninth day of the ten-day trip at

approximately 10:00 p.m. on the flats at the head of the Bradfield Canal in Southeast

Alaska.[7]  The sun had set at approximately 9:25 p.m.[8]

At the time of the shooting, Mr. Galla was hunting with the other two clients.[9]  Mr.

Millo was hunting with Dr. Delius.[10]  The two men had been traveling together until they

reached a slough that Dr. Delius was uncomfortable crossing.[11]  Mr. Millo crossed the

slough and directed Dr. Delius to take an alternate route approximately forty yards down

the slough.[12]  When Dr. Delius crossed the slough, he saw an aggressive bear on top of

---

[3] Dept. of Public Safety Information, Ex. C (at 4) to Mem. in Supp. of Mot. (Docket 38).

[4] Answer to Interrogs. Nos. 1 and 3, Ex. E to Mem. in Supp. of Mot. (Docket 41).

[5] Dep. of Mark Galla at 46-47, Ex. E to Mem. in Supp. of Mot. (Docket 41).

[6] *Id.*; Dep. of Marlin Benedict at 38, Ex. G to Mem. in Supp. of Mot. (Docket 38).

[7] Dept. of Public Safety Report at 1, Ex. C to Mem. in Supp. of Mot. (Docket 38).

[8] Almanac.com sunrise/sunset listing for May 30, 2010, Ex. 4 to Opp. (Docket 48).  *Cf.* Dept. of
Public Safety Report at 1, Ex. C to Mem. in Supp. of Mot. (Docket 38) (gauging sunset time as
9:22 p.m.).

[9] Wrangell Police Dept. Incident Report #1 at 2, Ex. B to Mem. in Supp. of Mot. (Docket 41).

[10] *Id.*

[11] Wrangell Police Dept. Supp. Report #2 at 3, Ex. B to Mem. in Supp. of Mot. (Docket 41).

[12] *Id.*

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 2 of 28

a cut bank, with Mr. Millo ten to twelve feet below.[13] The Wrangell Police later determined that Dr. Delius was approximately 178 feet away from that bank at that time.[14] Mr. Millo chased the bear away, but it returned.[15] Dr. Delius then heard Mr. Millo shouting at him to shoot the bear.[16] Dr. Delius was not wearing his glasses, as he had removed them for the stream crossing.[17] He has described the visibility conditions as "low-light."[18] Mr. Galla has testified that, shortly before he heard the fatal gunshot, he and the other two clients had discussed stopping the hunt for the day because of the light conditions.[19] Mr. Galla has also testified that the light at the time of the shooting was not so poor that he would have been unable to distinguish between a person and a bear.[20] Mr. Millo was dressed in brown, earth-toned clothing with no blaze orange or other bright colors.[21] Dr. Delius looked through the scope of his Blaser rifle, saw a moving silhouette where the bear had been, shot once, and then yelled to Mr. Millo asking if he had shot the bear.[22] When Mr. Millo did not respond, Dr. Delius made his

[13] *Id.*

[14] Wrangell Police Dept. Incident Report #1 at 2.

[15] Wrangell Police Dept. Supp. Report #2 at 3.

[16] *Id.*

[17] Dep. of Ralph Delius at 221-22, Ex. 8 to Opp. (Docket 48).

[18] *Id.* at 223. *See also* Answer to Interrogs. No. 2, Ex. E to Mem. in Supp. of Mot. (Docket 41) ("The lighting conditions were poor. I could only see a silhouette.").

[19] Dep. of Mark Galla at 48, Ex. F to Mem. in Supp. of Mot. (Docket 41).

[20] Dep. of Mark Galla at 141, Ex. 3 to Opp. (Docket 48).

[21] Dept. of Public Safety Report at 1; Wrangell Police Dept. Incident Report #1 at 2.

[22] Wrangell Police Dept. Supp. Report #2 at 3; Dep. of Mark Galla at 31-32, Ex. F to Mem. in Supp. of Mot. (Docket 41) (Dr. Delius was using a Blaser rifle).

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 3 of 28

way to the area he had shot at.[23]  It took Dr. Delius ten to fifteen minutes to reach Mr.

Millo, whom he found at the top of the bank, where Dr. Delius had last seen the bear.[24]

Dr. Delius immediately checked Mr. Millo's vital signs and determined that Mr. Millo was

dead.[25]  Dr. Delius fired several shots from his own rifle and Mr. Millo's rifle, and

dragged Mr. Millo's body down the bank to a position he thought better defensible from

bears.[26]  The shots alerted Mr. Galla and the other two clients, who arrived at the scene

approximately forty-five minutes later.[27]  Mr. Galla used his satellite phone to contact

the Wrangell Police Department, who arrived at approximately 2:00 a.m.[28]

The autopsy report prepared by the State Medical Examiner dated June 2, 2010

describes the bullet as having created a blast path through the right ventricle, right

atrium, intraventricular septum, and posterior left ventricle of the heart; through the

thoracic aorta; through the left lower lobe of the lungs; and through multiple ribs.[29]  The

report describes extensive hemorrhaging surrounding the blast path.[30]  It does not

contain an opinion on how long Mr. Millo lived after the shooting.  Dr. Delius' retained

---

[23] Wrangell Police Dept. Supp. Report #2 at 3.

[24] *Id.* ("Ralph said it took him about 15 minutes to get there."); Dept. of Public Safety Interview #2 with Ralph Delius at 6, Ex. C to Mem. in Supp. of Mot. (Docket 41) ("Delius stated it took him approximately 10 minutes" to reach Millo).

[25] Wrangell Police Dept. Incident Report #1 at 2.

[26] *Id.*; Wrangell Police Dept. Supp. Report #2 at 3.

[27] Wrangell Police Dept. Supp. Report #2 at 3.

[28] Wrangell Police Dept. Incident Rep. #1 at 1-2.

[29] Autopsy Report at 4, Ex. L to Mem. in Supp. of Mot. (Docket 38).

[30] *Id.*

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 4 of 28

medical expert, Dr. Vincent di Maio, reviewed the autopsy report, among other materials, and concluded that "[d]ue to the extreme nature of the internal wounds, [Mr. Millo's] death would have been instantaneous."[31]

Ms. Millo filed the complaint in this action in the Alaska Superior Court, Third Judicial District at Palmer on February 2, 2011 seeking compensatory, special, and punitive damages, as well as costs and attorney's fees on behalf of herself, Mr. Millo, and their three adult daughters.[32] Both parties submitted jury demands.[33] Dr. Delius timely removed this action to federal court on March 2, 2011.[34] Dr. Delius filed the present Motion for Partial Summary Judgment on January 18, 2012, seeking an order dismissing the punitive damages claim and the survival claim, precluding the characterization of loss of companionship and advice-related services as an economic loss, and excluding the Millos' three daughters from statutory beneficiary status. He also seeks a determination that the plaintiffs' non-economic claims are capped at $400,000.

## DISCUSSION

### I.  Jurisdiction

This court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds

---

[31] Expert Report of Vincent J.M. di Maio, M.D. at 4, Ex. M to Mem. in Supp. of Mot. (Docket 39).

[32] Compl., *Millo v. Delius*, Case No. 3PA-11-978 CI, Ex. A to Notice of Removal (Docket 1).

[33] Jury Demands, Exs. C, E to Notice of Removal.

[34] Notice of Removal.

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 5 of 28

$75,000.  In this diversity action, Alaska law applies to the substantive legal issues, while federal procedures apply.[35]

## II.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[36]  If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[37]  The non-moving party may not rely on mere allegations or denials.[38]  She must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[39]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the non-moving party's favor.[40]  To reach the level of a genuine dispute, the evidence must be such as "would allow a reasonable fact-finder to return a verdict for the non-

---

[35] *Erie v. Tompkins*, 304 U.S. 64 (1938).

[36] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[37] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986).

[38] *Id.* at 248-49.

[39] *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)).

[40] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 6 of 28

moving party."[41]  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[42]  If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[43]

A party asserting that a fact cannot be or is genuinely disputed must support its assertion by:

> (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[44]

When granting or denying a motion for summary judgment, a court should state on the record its reasons for doing so.[45]

---

[41] *Id.* at 248.

[42] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)).

[43] *Anderson*, 477 U.S. at 255.

[44] Fed. R. Civ. P. 56(c)(1).

[45] Fed. R. Civ. P. 56(a).

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 7 of 28

III.    **Analysis**

   ***A. Punitive Damages Claim***

   Ms. Millo seeks an award of punitive damages under AS 09.17.020, which

provides in pertinent part:

> (b) The fact finder may make an award of punitive damages only if the
> plaintiff proves by clear and convincing evidence that the defendant's
> conduct
>
>> (1) was outrageous, including acts done with malice or bad
>> motives; or
>>
>> (2) evidenced reckless indifference to the interest of another
>> person.

Ms. Millo asserts that Dr. Delius acted with reckless indifference to Mr. Millo's interest

by shooting purposefully after violating "numerous hunter safety rules and

commandments."[46]  Dr. Delius asserts that his actions were based on his reasonable

belief that he was shooting at a bear in an emergency situation at the specific instruction

of his guide, and additionally argues that Mr. Millo's decision to separate from him at the

stream crossing "was an extreme deviation from standard guiding practice" that

contributed to the shooting.[47]

   Ms. Millo cites to two cases in support of her position, *Hayes v. Xerox* and

*Chizmar v. Mackie*, although in each of those cases the Alaska Supreme Court held that

---

[46] Opp. at 6, 8 (Docket 48) (citing to Dep. of Ralph Delius at 135-36, Ex. 9 to Opp. (Docket 48)) (Dr. Delius testifying to have taken a Michigan firearm safety course in 2003 that addressed the "ten commandments of firearm safety")); *The Ten Commandments of Firearm Safety*, Michigan Dept. of Natural Res., Ex. 7 to Opp. (Docket 48).

[47] Mem. in Supp. of Mot. at 11-13.

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 8 of 28

punitive damages were not appropriate.[48]   Dr. Delius cites to *Pederson v. Barnes*, where the Court held that the trial court had erred in failing to grant a directed verdict for the defendant on a punitive damages claim because it concluded that there was no evidence that the defendant had acted with reckless indifference to the plaintiff's interests.[49]

In *Hayes*, the Alaska Supreme Court affirmed the superior court's grant of summary judgment in favor of the defendant on the issue of punitive damages.[50]   The defendant had failed to see a red light and had run through it, causing an accident in which the plaintiffs were injured.[51]   In setting out the applicable standard, the Court stated that "[a]ctual malice need not be proved" for an award of punitive damages; instead, "[c]onscious action in 'deliberate disregard of [others] . . . may provide the necessary state of mind[.]'"[52]   Citing to the commentary on the Restatement (Second) of Torts, the Court distinguished recklessness "from negligence which consists of mere

---

[48] Opp. at 6-8 (citing *Chizmar v. Mackie*, 896 P.2d 196 (Alaska 1995); *Hayes v. Xerox*, 718 P.2d 929 (Alaska 1986)).  Ms. Millo also cites to a unreported federal district court case, *Larson v. Era Aviation*, 2001 WL 34133498 (D. Alaska 2001).  Opp. at 7.

[49] Mem. in Supp. of Mot. at 9-10 (citing *Pederson v. Barnes*, 139 P.3d 552 (Alaska 2006)).  Dr. Delius also cites briefly to *Lamb v. Anderson*, 147 P.3d 736, 738 (Alaska 2006).  Opp. at 9.  In *Lamb*, the defendant had consumed an enormous quantity of alcohol before getting in his truck and striking the plaintiff motorcyclist, seriously injuring him.   *Lamb*, 147 P.3d at 738.  The Alaska Supreme Court held that the defendant's criminal conviction for assault was conclusive evidence of his recklessness for purposes of a punitive damages award, where recklessness was an element of the criminal charge. *Id.* at 745.

[50] *Hayes*, 718 P.2d 929.

[51] *Id.* at 931.

[52] *Id.* at 934 (citing *Sturm, Ruger & Co. v. Day*, 594 P.2d 38, 46 (Alaska 1979) *modified,* 615 P.2d 621 (Alaska 1980), *cert. denied*, 454 U.S. 894 (1981), *overruled on other grounds*, *Dura Corp. v. Harned*, 703 P.2d 396 (Alaska 1985), *quoting* RESTATEMENT (SECOND) OF TORTS § 908 (Tent. Draft No. 19, 1973)).

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 9 of 28

'inadvertence, incompetence, unskillfulness' because reckless misconduct requires a conscious choice of a course of action."[53] In *Hayes*, the Court found that because the defendant had not seen the red light, he had not made a conscious choice to run it. The Court therefore held that "reasonable jurors could not disagree that [the defendant's] actions constituted simple negligence and not reckless indifference to the interests of others."[54]

In *Chizmar*, the Court affirmed the superior court's directed verdict in favor of the defendant on the issue of punitive damages.[55] There, the defendant physician had misdiagnosed the plaintiff with HIV as a result of a false positive test and disclosed the test results to the plaintiff's spouse without her consent, causing emotional distress to the plaintiff as well as serious problems in her family and marriage.[56] The Court cited its prior holdings that "punitive damages are a harsh remedy 'not favored in law,'"[57] and held that the doctor's conduct "simply cannot be characterized as outrageous."[58] It buttressed its determination by referencing the defendant's actions after the

---

[53] *Id.* at 935 (citing RESTATEMENT (SECOND) OF TORTS § 500 comment (g) (1964)).

[54] *Id.* at 935-36.

[55] *Chizmar*, 896 P.2d 196.

[56] *Id.*

[57] *Id.* at 210 (citing *State Farm Mut. Auto. Ins. Co. v. Weiford*, 831 P.2d 1264, 1266 (Alaska 1992)).

[58] *Id.*

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 10 of 28

misdiagnosis and disclosure, such as requesting psychiatric assistance for the plaintiff, which demonstrated "a concern for his patient's emotional well-being."[59]

In *Pederson*, the Alaska Supreme Court held that the superior court's denial of the defendant's motion for a directed verdict on punitive damages was an abuse of discretion.[60] The plaintiff, a minor, filed suit against her guardian and the guardian's attorney, Mr. Pederson, alleging that she had been defrauded of over $100,000. Mr. Pederson did not have actual knowledge of the fraud, nor was there evidence he had attempted to avoid knowledge of the fraud.[61] The Court determined that Mr. Pederson "fail[ed] to appreciate the significance of certain warning signs" of his client's misconduct, and stated that it was "foolish" for him to have believed his client's assertions of honesty.[62] However, it held that the record contained no evidence that Mr. Pederson had acted recklessly, citing the Restatement (Second) of Torts' language distinguishing "mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence" from recklessness.[63]

Ms. Millo asserts the following facts to support her argument for punitive damages on the basis of recklessness: Dr. Delius was an experienced hunter familiar

---

[59] *Id.* at 210-11 (citing *Wien Air Alaska v. Bubbel*, 723 P.2d 627, 631 (Alaska 1986) (no reasonable juror could conclude defendant was indifferent to consequences of action where defendant attempted to remedy effects of allegedly wrongful act)).

[60] *Pederson v. Barnes*, 139 P.3d 552 (Alaska 2006).

[61] *Id.* at 562.

[62] *Id.* at 558-59.

[63] *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 908)).

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 11 of 28

with the use of his rifle.[64]   He had taken a hunter safety course as a prerequisite for a

hunting license and was knowledgeable about the safety rules of hunting.[65]   At the time

of the shooting, Dr. Delius, knowing Mr. Millo was downrange from him, sighted his rifle

and shot deliberately at movement.   In doing this, he violated numerous hunter safety

rules.[66]

For the purposes of this motion, this court accepts these facts as true,

supplementing them only with Dr. Delius' uncontroverted testimony that he believed he

was shooting at a bear that had been threatening Mr. Millo,[67] and that, due to the light

conditions and the fact that he had removed his glasses for the stream crossing,[68] he

was able to make out only movement or a silhouette.[69]   Applying the law to these facts

and viewing them in the light most favorable to the plaintiffs, this court finds that while

Dr. Delius deliberately shot his rifle, his belief that he was shooting at a bear is

inconsistent with reckless indifference to or deliberate disregard of Mr. Millo's safety.

While the shooting may have been the result of inadvertence, mistake, an error of

judgment, or incompetence, so as to constitute negligence, the evidence would not

permit "a reasonable fact-finder to return a verdict"[70] that Dr. Delius acted in deliberate

---

[64] Opp. at 8.

[65] *Id.*

[66] *Id.*

[67] Dep. of Ralph Delius at 215-16, Ex. D to Mem. in Supp. of Mot. (Docket 48).

[68] Dep. of Ralph Delius at 221, Ex. 8 to Opp. (Docket 48).

[69] *Id.* at 224.

[70] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  *See* discussion, *supra* pp. 6-7.

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 12 of 28

disregard of Mr. Millo's safety, so as to constitute recklessness under AS 09.17.020(b)(2). Summary judgment is therefore granted to Dr. Delius on the issue of punitive damages.

### B. Survival Claim

AS 09.55.570 provides that "[a]ll causes of action by one person against another, whether arising on contract or otherwise, except those involving defamation of character, survive to the personal representatives of the former[.]" Alaska permits a survival action which "comes into existence at the time of injury and may compensate the victim only for the period between the time of injury and the time of death."[71] The Alaska Supreme Court has held that "no award should be made for any pain and suffering 'substantially contemporaneous with death or mere incidents to it.'"[72]

Ms. Millo, as the personal representative of Mr. Millo, seeks to recover for the pain and suffering Mr. Millo experienced between his shooting and his death. Dr. Delius has presented expert medical testimony stating that because of the severity of the wounds, Mr. Millo's death was instantaneous,[73] and argues that under Alaska law the plaintiffs cannot maintain a survival claim. Ms. Millo maintains that the time of Mr. Millo's death presents a genuine issue of material fact, suggesting that Mr. Millo "could

---

[71] *In re Est. of Maldonado*, 117 P.3d 720, 729 (Alaska 2005).

[72] *N. Lights Motel, Inc. v. Sweaney*, 561 P.2d 1176, 1190 (Alaska 1977) (citing *St. Louis, Iron Mtn. & So. Ry. v. Craft*, 237 U.S. 648, 655 (1915)). *See also In re Est. of Maldonado*, 117 P.3d at 729; 25A C.J.S. § 33 ("pain and suffering substantially contemporaneous with death and so brief as to be inseparable from it are not sufficient to support an action under a survival statute.").

[73] Expert Report of Vincent J.M. di Maio, M.D. at 4, Ex. M to Mem. in Supp. of Mot. (Docket 39) ("Due to the extreme nature of the internal wounds, death would have been instantaneous.").

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 13 of 28

have taken several minutes to die while he was bleeding out." However, Ms. Millo has not provided any evidence to controvert the testimony of Dr. Delius' expert.[74]

Through his expert, Dr. Delius has demonstrated that any pain or suffering that Mr. Millo experienced on May 30, 2010 was "substantially contemporaneous" with his death. Ms. Millo has not presented evidence that demonstrates that there is a genuine factual dispute on this issue. Accordingly, Dr. Delius is entitled to summary judgment on the survival claim.

### C. Adult Daughters' Statutory Beneficiary Status

Subsection (a) of AS 09.55.580, Alaska's wrongful death statute, specifies the potential beneficiaries in a wrongful death action:

> The amount recovered, if any, shall be exclusively for the benefit of the decedent's spouse and children when the decedent is survived by a spouse or children, or other dependents. When the decedent is survived by no spouse or children or other dependents, the amount recovered shall be administered as other personal property of the decedent but shall be limited to pecuniary loss.[75]

Subsection (c) of the statute directs the trier of fact, when determining the amount of damages to be awarded, to consider "deprivation of the expectation of pecuniary benefits to the beneficiary or beneficiaries, without regard to age thereof, that would have resulted from the continued life of the deceased," among other factors.[76] Thus,

---

[74] Opp. at 9. Ms. Millo states that she has placed a request with the State Medical Examiner's Office regarding this case, but has not yet received a response. *Id.* However, expert disclosures for retained and non-retained experts were due by December 1, 2011, per the court's Scheduling and Planning Order at docket 11, and Ms. Millo did not send her request to the State Medical Examiner until January 25, 2012.

[75] AS 09.55.580(a).

[76] AS 09.55.580(c).

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 14 of 28

under this statute, dependency is relevant in two different aspects of a wrongful death case: in determining who qualifies as a statutory beneficiary under subsection (a) and in calculating the amount and allocation of the damage award under subsection (c). Here, the parties dispute whether Mr. Millo's three adult daughters are statutory beneficiaries under AS 09.55.580(a).

     *i. Dependency Requirement*

The parties dispute whether adult children of a decedent are "children" under the "spouse or children or other dependents" language of subsection (a) of Alaska's wrongful death statute. Dr. Delius argues that they are not; Ms. Millo disagrees. The language of the statute on this point is ambiguous and the case law does not expressly resolve this issue.

The first listed definition in Black's Law Dictionary for "child" is "a person under the age of majority;" but that dictionary also contains a definition for child as a "son or daughter." In this court's view, the wrongful death statute should be read to conclusively presume that a decedent's spouse and his minor children are dependent upon the decedent, whereas adult children would be statutory beneficiaries as "other dependents," but only when they demonstrate actual dependency on the decedent. Such an approach is consistent with other Alaska law. Thus, a child over 18 years "has no legal right to post-majority educational support in Alaska."[77] And AS 11.51.120(a) states that a person is criminally liable if, "being a person legally charged with the support of a child, the person fails without lawful excuse, to provide

---

[77] *Dowling v. Dowling*, 679 P.2d 840 (Alaska 1984), *superseded in part by statute to extend post-majority support to children age 18 while still in high school. See* AS 25.24.170(a).

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 15 of 28

support for the child."  Subsection (f) of that statute defines a "child" as a person under 18 years of age or 18 years of age or older for whom a person is ordered to pay support under a valid court or administrative order.  In *Dowling v. Dowling*, the Alaska Supreme Court recognized that the "only legal recourse [an adult child] has to obtain post-majority aid is under AS 25.20.030," which provides that "[e]ach parent is bound to maintain the parent's children when poor and unable to work to maintain themselves"—in effect, when the adult child is a dependent of her parent.[78]

The Alaska Supreme Court has, with increasing clarity over the years, equated "statutory beneficiaries" with "dependents."  In one of the earliest and most often cited cases on this subject, *In re Estate of Pushruk*, the Court engaged in an extended discussion of the necessity of dependency at the time of death.[79]  There, the non-dependent mother of the decedent unsuccessfully argued that she was a statutory beneficiary.  The Court, "[c]onsidering the history and purposes of the statute," determined that the legislature's decision to include the "other dependents" language "appear[ed] designed to protect the interest of those who, like children and spouses, will suffer financial loss."[80]  Thus, the Court interpreted the statutory phrase "spouse and children" to presume that the decedent's children will suffer financial loss at his death—an interpretation that is consistent with defining children to include only the decedent's minor children.

---

[78] 679 P.2d 480 (Alaska 1984).

[79] 562 P.2d 329 (Alaska 1977).

[80] *Id.* at 331.

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 16 of 28

In *Greer Tank & Welding, Inc. v. Boettger*, the Court held that the decedent's ex-wife and non-adopted eleven year-old stepson, who lived apart from the decedent but received occasional financial support from him, could recover as beneficiaries as "other dependents" under the statute.[81] The Court explained that it interpreted the legislature's intent in adding the words "'other dependents' to the categories of spouse and children to embrace those who occupy a position similar to those in the specified classes and who were actually dependent upon the decedent for support at the time of his death."[82] Here again, this evinces the Court's interpretation that the "spouse and children" in the statute are actually dependent upon the decedent for support, which would not necessarily be the case for adult children. Similarly, in *Sowinski v. Walker*, the Court held that a nondependent sibling could not recover for the wrongful death of her two brothers.[83]

Ms. Millo argues that adult children need not be dependent in order to recover under the statute—rather, they are "children" that are presumptive statutory beneficiaries. Her analysis cites to two cases, *Horsford v. Est. of Horsford* and *Kulawik v. ERA Jet Alaska*.[84] These cases both focus on the language in AS 09.55.580(c)(1),

---

[81] 609 P.2d 548 (Alaska 1980).

[82] *Id.* at 551.

[83] 198 P.3d 1134, 1161 (Alaska 2008) ("Because neither decedent had any dependents . . . AS 09.55.580(a) limited the recovery of the estates to pecuniary harm[.]") (citing *In re Estate of Pushruk*, 562 P.2d at 331 (defining "dependent" for purposes of AS 09.55.580 as one who is actually dependent upon the decedent for support at the time of his death, such as spouses or children)). *Cf.* AS 09.15.010 (allowing a parent to maintain an action "for the injury or death of a child below the age of majority.").

[84] Opp. at 10-11 (citing *Horsford v. Est. of Horsford*, 561 P.2d 722, 728 (Alaska 1977); *Kulawik v. ERA Jet Alaska*, 820 P.2d 627 (Alaska 1991)).

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 17 of 28

which directs a court or jury to consider the pecuniary loss of the beneficiaries "without regard to age thereof[.]" However, that portion of the statute addresses the second aspect of a beneficiary award determination—fixing the amount of damages—and is not directly relevant to the first aspect—determining who is a statutory beneficiary entitled to damages.

In *Horsford*, the Alaska Supreme Court affirmed the superior court's allocation of a wrongful death settlement between the decedent's widow and two minor children.[85] The Court indicated that "[a]nalysis of the Alaska Wrongful Death Statute demonstrates that the legislature intended that damages in a wrongful death case are to be assessed according to the actual losses of each qualified surviving beneficiary."[86] It cited approvingly to the superior court's use of a formula that allocated losses to the decedent's children only through their age of majority, because of "the general rule that parents support their children until they reach the age of majority."[87] The Court explained that this formula was "not in irreconcilable conflict with the 'without regard to age' phraseology" of subsection (c) of the statute, and specified that the formula could be adjusted or even abandoned, if the evidence indicated "a continued expectation of pecuniary contributions beyond the age of majority."[88]

---

[85] *Horsford*, 561 P.2d at 728 (Alaska 1977).

[86] *Id.* at 726.

[87] *Id.* at 728 n.15.

[88] *Id.* at 728.

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 18 of 28

In *Kulawik*, the Alaska Supreme Court reviewed the amount of damages awarded by the superior court to the decedent's minor children.[89]   The Court approvingly characterized *Horsford* as holding that "evidence of decreased  expectation of pecuniary benefit with increased age *is* admissible as evidence of the beneficiaries' expectation of pecuniary loss; the 'without regard to age' language is simply a substantive directive against precluding recovery for adult-aged beneficiaries."[90]

More recently, in *North Slope Borough v. Brower*, the Alaska Supreme Court affirmed the jury's award of wrongful death damages to the decedent's mother as an "other dependent."[91]  There, the Court described its holding in *Kulawik* as relying on "the wrongful death statute's requirement that recovery be exclusively for the benefit of the decedent's dependents."[92]   Although the case law is not without some degree of ambiguity,[93] this court interprets Alaska's wrongful death statute as conclusively presuming that a surviving spouse or minor child of a wrongful death victim is dependent on the decedent, whereas dependency must be established for all other individuals, including the decedent's adult children.

*ii.   The Definition of Dependency*

Ms. Millo asserts that even if dependency is required for surviving adult children, the Millo daughters would qualify, as they relied on their father in a number of non-

---

[89] *Kulawik*, 820 P.2d 627.

[90] *Id.* at 634 (citing *Horsford*, 561 P.2d at 728-29) (emphasis in original).

[91] 215 P.3d 308 (Alaska 2009).

[92] *Id.* at 312-12 (citing *Kulawik*, 820 P.2d at 635).

[93] *See, e.g., Kulawik*, 820 P. 2d at 638 n.21.

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 19 of 28

financial ways.[94]   She maintains, in effect, that non-financial reliance on the decedent constitutes dependency under the statute.

The Alaska Supreme Court has rejected limiting the scope of dependency under the wrongful death statute to legal dependency.[95] And yet it has consistently defined dependency in the context of financial support.  In *Haakanson v. Wakefield Seafoods, Inc.*, one of the earlier cases addressing this issue, the Alaska Supreme Court stated that AS 09.55.580 "recognizes a cause of action for the benefit of surviving children who were dependent upon a deceased parent for care and support."[96]  In *Greer Tank & Welding*, the Court expressed a desire to assure "the protection of the interests 'of those who, like children and spouses, will suffer *financial loss.*'"[97]  The Court held that to recover under the statute, "[a] showing must be made of actual dependency for significant contributions of support over a sufficient period of time to justify the assumption that such contributions would have continued."[98]  And most recently, in *Sowinski v. Walker*, the Court cited to *In re Estate of Pushruk* as "defining 'dependent'

---

[94] Opp. at 12.

[95] *Greer Tank & Welding, Inc. v. Boettger*, 609 P.2d 548, 550-51 (Alaska 1980) (rejecting Greer's proposal "to limit the scope of 'other dependents' to legal dependents.").

[96] *Haakanson v. Wakefield Seafoods, Inc.*, 600 P.2d 1087, 1089 (Alaska 1979) (dependency requirement mentioned in passing; case decided on statute of limitations grounds).

[97] *Greer Tank & Welding, Inc.*, 609 P.2d at 551 (citing *In re Estate of Pushruk*, 562 P.2d at 331) (emphasis added).

[98] *Id.*

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 20 of 28

for purposes of AS 09.55.580 as one who is actually dependent upon the decedent for support at the time of his death, such as spouses or children[.]"[99]

In *North Slope Borough v. Brower*, a plaintiff mother's "dependence on [her decedent son's] subsistence and non-market support was sufficient to justify the jury's finding that she was an 'other dependent" under the wrongful death statute[.]'"[100] There, the son and his mother had lived together in a home in the North Slope community of Barrow.[101] The son had "hunted and fished for Native subsistence foods that he shared with his mother."[102] The Millos, by contrast, reside in the considerably more urban Palmer area.[103] Each of the daughters lives in her own home.[104] While it is not disputed that Mr. Millo provided his daughters with fish and meat that he caught and hunted, and performed repairs at their homes,[105] no evidence has been presented that the daughters were economically dependent on their father's hunting to make ends meet. Indeed, all three daughters have testified to their financial self-sufficiency.[106]

---

[99] *Sowinski v. Walker*, 198 P.3d 1134, 1161 n.138 (Alaska 2008) (citing *In re Estate of Pushruk*, 562 P.2d at 331).

[100] 215 P.3d 308, 314 (Alaska 2009).

[101] *Id.* at 310.

[102] *Id.*

[103] Wrangell Police Dept. Supplemental Report #1, Ex. 12 to Opp. (Docket 48) (listing Mr. Millo as having a Palmer address).

[104] Dep. of Jamie Millo at 12, Ex. N to Mem. in Supp. of Mot. (Docket 39); Dep. of Jesse Kirgis at 12-13, Ex. P to Mem. in Supp. of Mot. (Docket 39); Dep. of Randi Bleau at 6, 11, Ex. O to Mem. in Supp. of Mot. (Docket 39).

[105] Reply at 7-8 (Docket 51).

[106] Dep. of Jamie Millo at 7, 12-13; Dep. of Jesse Kirgis at 6, 7, 13; Dep. of Randi Bleau at 6, 11-12.

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 21 of 28

The Millos have been a close family, and have relied on each other to help care for grandchildren and for household tasks. But such reliance is not within the ambit of statutory dependency for wrongful death purposes. And Mr. Millo's provision of his daughters with fish and game, in the circumstances of this case, cannot serve as a basis for statutory dependency. To hold otherwise could extend dependent status to anyone who has been on the receiving end of a generous and successful hunter or fisherman in Alaska.

This court finds that the precedents of the Alaska Supreme Court establish that an individual must be dependent on the decedent for financial support in order to qualify as a dependent for statutory beneficiary purposes.

### iii. Dependency of Mr. Millo's Daughters

"[D]ependency is a question of fact."[107] As such, a determination of the Millo daughters' dependency, and therefore their status as statutory beneficiaries, is appropriate for summary judgment only if there is no genuine factual dispute over the extent of their reliance on Mr. Millo.

Ms. Millo asserts, and her three daughters have testified, that Mr. Millo had a model relationship with his children. He was a constant presence in their lives. He lived near them and spent much of his time with them; hunted and guided with their husbands; helped them construct, repair, and maintain their homes; provided fish and game for their families; and gave them the benefit of his advice and experience.[108]

---

[107] *Greer Tank & Welding, Inc*, 609 P.2d at 501 (citing *In re Estate of Pushruk*, 562 P.2d at 331).

[108] Opp. at 12.

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 22 of 28

However, Ms. Millo acknowledges that the daughters' "economic dependence may have been slight,"[109] and the daughters themselves have testified to financial self-sufficiency for a considerable period of time predating Mr. Millo's death.[110] Jamie Millo, the Millos' youngest daughter, was twenty years old at the time of the shooting and has been financially independent of her parents since she purchased a home using her own funds in 2008.[111] Jesse Kirgis, the Millos' middle daughter, was twenty-three at the time of the shooting and has been financially independent since her marriage in February 2004.[112] Randi Bleau, the Millos' oldest daughter, was twenty-nine at the time of the shooting and has been financially independent from her parents since her marriage in June 1999.[113] Ms. Kirgis has testified that she has suffered no out-of-pocket expenses as a result of Mr. Millo's death.[114] Ms. Bleau has testified that she has taken fewer shifts at work because Mr. Millo is no longer available to babysit for her, and that her husband has worked extra shifts to make up for that.[115]

Viewing the facts in the light most favorable to Ms. Millo, they do not support a finding that the Millos' daughters were financially dependent on Mr. Millo at the time of

---

[109] Opp. at 12. *See also* Dep. of Kristy Millo at 188, Ex. Q to Mem. in Supp. of Mot. (Docket 39).

[110] Dep. of Jamie Millo at 7, 12-13; Dep. of Jesse Kirgis at 6, 7, 13; Dep. of Randi Bleau at 6, 11-12.

[111] Dep. of Jamie Millo at 7, 12-13.

[112] Dep. of Jesse Kirgis at 6, 7, 13.

[113] Dep. of Randi Bleau at 6, 11-12.

[114] Dep. of Jesse Kirgis at 54.

[115] Dep. of Randi Bleau at 18-19.

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 23 of 28

his death.[116]  While this court finds that the three Millo daughters have each suffered the loss of their father, and that loss has profoundly affected each of their lives, they are not statutory beneficiaries under Alaska's wrongful death statute.[117]  Summary judgment is therefore granted to Dr. Delius on this claim.

### D. $400,000 Cap on Non-Economic Damages

The parties are in agreement that the plaintiffs' non-economic damages will be capped at $400,000 pursuant to AS 09.17.010.[118]  Ms. Millo asserts that deciding the issue on summary judgment is premature.[119]  However, as the parties also agree that the jury should not be told of the cap,[120] this court finds that its applicability can be established at this point.  Non-economic damages will therefore be limited to the statutory cap of $400,000.[121]

---

[116] Ms. Millo has testified that she and Mr. Millo had intended to help Ms. Kirgis and Jamie Millo pay off their student loans and to assist Ms. Bleau with a down payment on a home, but had not actually done so.  Dep. of Kristy Millo at 186-88.  A prospective intent to provide future financial assistance—absent actual financial dependency on the decedent at the time of his death—is not a basis for dependency.

[117] This court truly commends the Millos for raising such responsible adults, who were each able to achieve financial independence at a young age while maintaining a close relationship with their family.

[118] Mem. in Supp. of Mot. at 20-22; Opp. at 13.

[119] Opp. at 13.

[120] Opp. at 13; Reply at 8.  This is in line with settled Alaska case law.  *Kodiak Island Borough v. Roe*, 63 P.3d 1009, 1016-17 (Alaska 2003) ("The legislature may limit the amount of damages that can be awarded, but it is for the jury to determine the extent of the plaintiff's injury and the damage award that will make her whole.  Instructing the jury on the cap interferes with these responsibilities.").

[121] The Alaska Supreme Court has expressed misgivings over the effect the statutory cap has on a plaintiff's ability to recover fully for an injury, but has consistently deferred to the legislature's right to implement it.  *See, e.g., C.J. v. State, Dept. of Corrs.*, 151 P.3d 373, 382 (Alaska 2006) (footnotes omitted) ("[W]e appreciate that there will be severely injured persons

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 24 of 28

### E. Companionship and Advice-Related Services Claim

Ms. Millo seeks to recover economic damages for the loss of Mr. Millo's "Companion and Advice-type Services" based on the report of her expert economist, Dr. Pershing Hill.[122] Dr. Delius argues that the companion and advice-type services valued by Dr. Hill are "subsumed in the category of non-economic damages and should not be otherwise monetized."[123] Thus, he asserts they fall within the $400,000 cap for non-economic damages. For purposes of this motion, this court assumes that Mr. Millo provided companionship and advice-related services to his family. Whether economic damages can be awarded for such services presents a question of law appropriate for summary judgment.

AS 09.17.010 provides that in a wrongful death action, "all damage claims for noneconomic losses shall be limited to compensation for pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life, loss of consortium, and other nonpecuniary damage." AS 09.55.580(c) lists considerations for the trier of fact to apply in determining the amount of an award, among them "(3) loss of assistance or services irrespective of age or relationship of decedent to the beneficiary or beneficiaries" and "(4) loss of consortium[.]"

---

who are under-compensated as a result of this legislation, and we are under no illusion that this result will seem fair to them. In deciding that the cap is constitutional, we express no opinion about whether damages caps are good policy. As we noted in *Evans* [*v. State*, 56 P.3d 1046, 1054], (Alaska 2002) '[i]t is not a court's role to decide whether a particular statute or ordinance is a wise one; the choice between competing notions of public policy is to be made by elected representatives of the people.'").

[122] Report of Dr. Hill at 13, Ex. R. to Mem. in Supp. (Docket 39).

[123] Mem. in Supp. of Mot. at 24.

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 25 of 28

Ms. Millo asserts that the loss of Mr. Millo's companionship and advice is an economic loss of services.[124] She relies on Dr. Hill's report and a publication on economic damages, but cites no cases that support the characterization of loss of companionship and advice as an economic loss.[125]

In the 1974 case of *Schreiner v. Fruit*, the Alaska Supreme Court established that wives could recover for loss of a husband's consortium.[126] Previously only husbands had a right to recover for loss of a wife's consortium.[127] The following language from *Schreiner* is instructive:

> A claim for relief for loss of consortium provides a means of recovery for an injury not otherwise compensable. It should be recognized as 'compensating the injured party's spouse for interference with the continuance of a healthy and happy marital life.' The interest to be protected is personal to the wife, for she suffers a loss of her own when the care, comfort, companionship, and solace of her spouse is denied her.[128]

As this passage demonstrates, Alaska has—from the beginning of its recognition of this cause of action for women—considered the loss of "companionship and solace" to be in the same class as the non-economic loss of consortium.

---

[124] Opp. at 14.

[125] Ms. Millo asserts as part of her description of Mr. Millo's companionship that Mr. Millo "had taken on the primary responsibility of taking care of the home." Opp. at 14. However, Mr. Millo's household services have been valued by Dr. Hill in a separate category of his report, and Ms. Millo's ability to seek recovery for them has not been put at issue by Dr. Delius in this motion.

[126] 519 P.2d 462 (Alaska 1974). Though the Alaska Supreme Court recognized the cause of action in *Schreiner*, it ultimately held that the plaintiff's claim in that case was barred by the failure to join her claim with her husband's prior claim of injury.

[127] *Id.*

[128] *Id.* at 465-66 (citations omitted).

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 26 of 28

The Alaska Supreme Court's recognition of loss of companionship as a non-economic loss is borne out in more contemporary contexts as well. In *North Slope Borough*, the Alaska Supreme Court upheld a jury's verdict that had awarded damages to the decedent's mother as a beneficiary under the wrongful death statute. The jury's verdict had segregated the plaintiff's damages into the categories of economic and non-economic losses. The description for non-economic loss included "loss of consortium, affection and companionship."[129]

Plaintiffs' expert Dr. Hill attempts to distinguish companionship from consortium by asserting that "people are able to hire paid 'companions'" such as nurses and health aides. He uses wage rates for those professions to value the loss of Mr. Millo's services in that regard.[130] However, the practical examples of companionship Dr. Hill describes in his report are activities such as bowling, sharing an evening meal, attending movies, and other social activities that do not resemble the duties of a paid nurse or health aide.[131] Non-economic damages are, as the Alaska Supreme Court stated in *Schreiner*, a means of recovering "for an injury not otherwise compensable."[132] The implications of Dr. Hill's argument—that a surviving spouse could pay a companion to provide the type of companionship the married couple had formerly enjoyed—are not convincing. This

---

[129] 215 P.3d 308, 311 (Alaska 2009) ("Past Non-Economic Loss to Isabel Brower (including loss of consortium, affection and companionship and pain and suffering of Isabel Brower): $250,000.00").

[130] Report of Dr. Hill at 8, Ex. R. to Mem. in Supp. (Docket 39).

[131] *Id.*

[132] *Schreiner*, 519 P.2d at 465.

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 27 of 28

court finds that the loss of companionship and advice that a surviving spouse experiences, while indisputably a loss, is not an economic loss under Alaska law.

While non-market services such as the performance of household chores and subsistence hunting and fishing can, under Alaska law, qualify as economic damages, the provision of companionship and advice from a loved one falls within the category of non-economic damages, and is therefore subject to the statutory cap on such damages. Accordingly, summary judgment is granted to Dr. Delius on this issue.

## CONCLUSION

For the foregoing reasons, Dr. Delius' Motion for Partial Summary Judgment is GRANTED.

Dated at Anchorage, Alaska this 9th day of May, 2012.


/s/ Sharon L. Gleason
United States District Judge

3:11-cv-00027-SLG, *Millo v. Delius*
Order Regarding Defendant's Motion for Partial Summary Judgment
Page 28 of 28